# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSUE ISAAC RODAS GODINEZ,

      Petitioner,

      v.                                                                                        No. 2:20-cv-466 KWR/SMV

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,
COREY PRICE, DIRECTOR MATTHEW T. ALBENCE,
CHAD WOLF, WILLIAM BARR,
UNITED STATES DEPARTMENT OF JUSTICE,
WARDEN DORA OROZCO,

      Respondents.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction, filed May 5, 2020 (**Doc. 5**). Petitioner requests that the Court issue a temporary restraining order or preliminary injunction directing Respondents to release him from the Otero County Processing Center. This case was transferred to the undersigned on May 14, 2020, from the Western District of Texas. Having reviewed the parties' pleadings and the applicable law, the Court finds that Petitioner's motion is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

Petitioner came across the border as an unaccompanied minor. He was transferred to the custody of the Office of Refugee Resettlement ("ORR") within the Department of Health and Human Services. He was placed in an ORR shelter near El Paso, Texas for unaccompanied

migrant children. When he turned 18, he was transferred to the custody of Department of Homeland Security and placed in the Otero County Processing Center.

In June of 2019 an immigration judge terminated removal proceedings against Petitioner and DHS appealed to the BIA. The appeal is pending.

Before this case was transferred to the undersigned, Petitioner tested positive for COVID-19. Petitioner was asymptomatic for fourteen days. Petitioner has hypertension which is apparently controlled with medication.

This case was originally filed in the Western District of Texas and transferred to the undersigned for lack of jurisdiction. The Government admits that this Court has jurisdiction over this matter. **Docs. 6, 8 at 7.** After Petitioner filed this motion, he filed an amended petition, but it does not appear that he seeks to withdraw this motion.

Although this was originally filed as a class action, the amended petition removed the class action allegations. In his amended petition, Petitioner asserts the following claims:

Count I: Administrative Procedure Act 5 U.S.C. § 706(2). ICE is violating 8 USC §1232(c)(2)(B) by failing to consider the least restrictive setting and failing to make alternatives to detention available to Petitioner.

Count II: APA: ICE is failing to take action it is required to take under 8 USC § 1232(c)(2)(B).

Count III: ICE Violation of the Fifth Amendment Right to Due Process for Deprivation of Liberty.

This matter was fully briefed on June 11, 2020 and is ready for decision.

## LEGAL STANDARD

"[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction." 13 Moore's Federal Practice § 65.31 (2020); *see* Fed. R. Civ. P. 65. Respondents received notice of Petitioner's motion for a temporary restraining order and filed a response opposing it. The Court, therefore, will treat Petitioner's motion as a request for a preliminary injunction.

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). To obtain a preliminary injunction, Petitioner must establish: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (*emphasis* added) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (quoting *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir. 2008)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Petitioner's request for immediate release from Otero meets at least two disfavored categories, he faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.*

**DISCUSSION**

The Court limits its ruling to the arguments raised in Petitioner's motion for preliminary injunction. **Doc. 5.** To the extent Petitioner asserts new claims in his Amended Petition (**Doc. 13**), this decision does not address those unraised claims. In the motion, Petitioner (1) requested a Writ of Habeas Corpus pursuant to § 2241 for violation of his Fifth Amendment due process rights and (2) asserted that Respondents failed to comply with 8 USC § 1232(c)(2)(B) in violation of the Administrative Procedures Act. As a remedy, he requests release from detention. For the reasons stated below, the Court finds that Petitioner has not shown a substantial likelihood of success on the merits and a preliminary injunction is not appropriate.

## I.     Writ of Habeas Corpus under § 2241 for Violation of Petitioner's Fifth Amendment Due Process rights.

Petitioner requests that the Court issued a writ of Habeas Corpus pursuant to § 2241 releasing him from detention for violation of his Fifth Amendment Due Process rights. Petitioner argues that his "continued detention in conditions that place him at substantial risk of serious illness or death from COVID-19 violates [his] due process rights under the Fifth Amendment." **Doc. 5.** He also argues that his continued detention in conditions that do not permit social distancing and do not provide for adequate hygiene, given his vulnerability, violates due process.

Respondents argue that habeas relief under § 2241 is not available here, because Petitioner essentially challenges his conditions of confinement. The Court agrees. Petitioner did not address this legal argument in his reply.

Habeas relief is only available under § 2241 where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody. Though the Supreme Court

has not set the precise boundaries of habeas actions, it has distinguished between habeas actions and those challenging conditions of confinement. [The Tenth Circuit] has endorsed this distinction." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal citations and quotation marks omitted)

"It is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)—not through federal habeas proceedings." *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011).

"In this circuit, a prisoner who challenges the fact or duration of his confinement *and* seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (emphasis added and internal citations omitted). In other words, in the Tenth Circuit a habeas action is available to challenge the *underlying legal basis* for detention or the length of detention, but not conditions of confinement.

Here, as to his due process claim, Petitioner does not challenge the underlying legal basis for his custody or the duration of his confinement. Rather, he asserts that the conditions of confinement are so unlawful as to mandate release. For example, he states his "continued detention in conditions that place him at substantial risk of serious illness or death from COVID-19 violates [his] due process rights under the Fifth Amendment." **Doc. 5 at 31-32.** Under the binding Tenth Circuit law cited above, a conditions of confinement claim such as this is not appropriate in a § 2241 habeas action but must be asserted under § 1983 or *Bivens*. *See, e.g., Betancourt Barco v.*

5

*Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 2099890, at *6 (D.N.M. May 1, 2020) ("Accordingly, the Court finds that Plaintiffs are challenging the conditions of their detention, as opposed to its fact or duration, which is not appropriate under 28 U.S.C. § 2241."); *See Basri*, No. 20-cv-00940-DDD, slip op. at 9 ("[I]t is the conditions, not the fact of his detention, he is challenging when he cites the undoubtedly dangerous *condition* of the spreading COVID-19 disease."); *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *6 (D. Colo. May 27, 2020) ("As a result, the Court finds that petitioners attack the conditions of their confinement and not the fact or duration of their confinement.")

Moreover, a number of district courts in the Tenth Circuit have similarly concluded that a request for release because of COVID-19 is essentially a challenge to conditions of confinement and therefore habeas relief is not available under § 2241. The Court finds these cases and their reasoning persuasive. *Basri v. Barr*, 1:20-cv-00940-DDD, 3–11 (D. Colo., May 11, 2020, *cited in Aguayo v. Martinez*, No. 120CV00825DDDKMT, 2020 WL 2395638, at *2 (D. Colo. May 12, 2020); *Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 2099890, at *6 (D.N.M. May 1, 2020) ("Although Plaintiffs are requesting immediate release, they are not challenging the legality or duration of their detention. At the core of their argument, they contend that the conditions of their detention at Otero are inadequate to protect them from exposure to COVID-19"); *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020).

The Court notes that release is an extraordinary remedy. Petitioner has not offered any other proposed remedy or relief, such as modifying conditions in the detention facility. Petitioner has failed to show why another, lesser remedy, such as changing the conditions of confinement is not available. *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *6 (D. Colo. May

27, 2020) ("However, if detention itself is lawful, but the surrounding circumstances are not, release is not the only possible remedy: conditions can be improved to make them constitutional."). As the Government argues, Petitioner has not provided "authority under which such a violation would justify immediate relief, as opposed to injunctive relief that would leave [him] detained while ameliorating any alleged violative conditions within the facility." *Dawson v. Asher*, 2020 WL 1304557, at *1 (W.D. Wash. Mar. 19, 2020); *Toure,* 2020 WL 2092639, at *9 (noting that when conditions of confinement are challenged, "injunctive relief … would require any deficient conditions of confinement be cured as opposed to release.")

Alternatively, the Court notes that after the complaint was filed but before this case was transferred to the undersigned, Petitioner's situation materially changed. He tested positive for COVID-19 but was asymptomatic during his fourteen-day quarantine. To the extent Petitioner argues he should be released under the Fifth Amendment because of the danger of getting COVID-19, the Court finds that argument now moot. Petitioner argues that he could contract the virus again, but that is unclear in the record.

## II. Alleged failure to place Petitioner in the least restrictive setting as required by 8 U.S.C. § 1232(c)(2)(B) and in violation of the Administrative Procedures Act.

In 2019, Petitioner entered the United States illegally. Because he was an unaccompanied minor, he was placed in the custody of the Department of Health and Human Services, Office of Refugee Resettlement. At that time, the Government was required to place him in the "the least restrictive setting that is in the best interest of the child." § 1232(c)(2)(A). The Government did so.

7

When Petitioner turned 18 earlier this year, he "aged out" of ORR custody and he was transferred to the custody of the Department of Homeland Security. The Secretary of Homeland Security (the "Secretary") was then required to:

> ***consider* placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight.** Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

8 U.S.C. § 1232(c)(2)(B) (emphasis added).

Petitioner asserts that the Secretary failed to act by not considering Petitioner's placement in the least restrictive setting and to make alternatives to detention available. **Doc. 5 at 34.** As a remedy, he requests that he be released from detention and placed at a group home.

### A. Court lacks jurisdiction to review discretionary placement decision.

The Government argues that the Court lacks jurisdiction to review the Secretary's discretionary placement decision. The Court agrees.

The statute at issue confers discretion on the Secretary to decide the placement of an age out, requiring only that the Secretary "consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B); *see, e.g., Mendez Ramirez v. Decker*, No. 1:19-CV-11012-GHW, 2020 WL 1674011, at *9 (S.D.N.Y. Apr. 3, 2020) (reading section as providing that "DHS can exercise its discretionary authority to place former UACs subject to Section 1232(c)(2)(B) into the "alternative to detention programs" referred to in that section."). Nothing in this language mandates placement of age-outs in the least restrictive setting. *Compare* § 1232(c)(2)(B) *with* § 1232(c)(2)(A) providing that under-aged children "shall be promptly placed in the least restrictive setting that is in the best interest of the child"). Here, the phrase "shall consider placement in the

least restrictive setting" clearly imparts discretion on the Secretary in deciding where to place age-outs.

"[C]hallenges directed solely at the agency's discretionary and factual determinations remain outside the scope of judicial review" under 8 U.S.C. § 1252(a)(2)(B)(ii). *Ferry v. Gonzales,* 457 F.3d 1117, 11130 (10th Cir. 2006). That statute provides that "no court shall have jurisdiction to review… (ii) any other decision or action of the … Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion… of the Secretary of Homeland Security…" § 1252(a)(2)(B)(ii). The Tenth Circuit does not require the use of the word "discretion" and will infer discretion when it arises from the statutory text. *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999); *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010) (employing conditional terms such as "may" and "at any time," the statute uses language that is "indicative of administrative discretion."). Therefore, the Court concludes that § 1252(a)(2)(B)(ii) clearly bars this Court's review of Respondents' discretionary decision to "consider placement in the least restrictive setting."

To get around this clear jurisdictional bar, Petitioner appears to assert that Respondents failed whatsoever to *consider* placing Petitioner in the least restrictive setting. Petitioner does not point to any evidence specific to his case that Respondents failed to do so. Rather, as explained below, the evidence clearly shows that Respondents did consider placement in the least restrictive setting and considered the relevant statutory factors.

The Court finds that Petitioner is attempting to get around the jurisdictional bar. "[A]n alien cannot indirectly obtain judicial review of a discretionary ruling that is not directly reviewable." *Lopez-Gonzales v. Sessions*, 736 F App'x 725, 729 (10th Cir. 2018) (quoting *Alzainati v. Holder,* 568 F.3d 844, 848 (10th Cir. 2009); *Green v. Napolitano*, 627 F.3d 1341,

1346-47 (10th Cir. 2010) (rejecting petitioner's "attempt to circumvent the jurisdictional bar of 1252(a)(2)(B)(ii) by repackaging challenge to Secretary of Homeland Security's discretionary decision to revoke a visa"); *Kadim v. Holder*, 563 F. App'x 634, 638 (10th Cir. 2014) (rejecting petitioner's claim because he " in essence challenges the [immigration judge's] weighing of the evidence, a matter we lack jurisdiction to review."). Here, although Petitioner states that Respondents failed whatsoever to consider placement in the least restrictive setting, he is in fact challenging the Respondents' discretionary decision made after considering the statutory factors and the evidence. Therefore, the Court finds that it lacks jurisdiction under § 1252(a)(2)(B)(ii).

**B.    Petitioner otherwise failed to show that DHS failed to act as required under § 1232(c)(2)(B).**

Alternatively, even if the Court had jurisdiction to hear Petitioner's argument that Respondents failed to consider his placement in the least restrictive setting, the Court would decline to grant preliminary injunctive relief. For the reasons stated by Respondents, the Court concludes that Petitioner has not shown that the Secretary failed to consider placing Petitioner in the least restrictive setting. **Doc. 16 at 22-24.**

The Court notes the limited scope of Petitioner's argument in his motion. Petitioner argues that Respondents failed to comply with § 1232(c)(2)(B) by not following their "statutory obligations and consider Plaintiffs' placement in the least restrictive setting, including alternatives to detention." **Doc. 5 at 33.** He states that "on information and belief, the ICE El Paso field office routinely and systematically fails to comply with the requirements of Section 1232(c)(2)(B). Instead, ICE automatically and summarily places such individuals in adult detention without affirmatively considering or making available any alternatives." **Doc. 5 at 33.**

Petitioner asserts that the Secretary violated the Administrative Procedures Act by "failing to act" as required under § 1232(c)(2)(B). **Doc. 5 at 33.** Petitioner argues that the court can "compel agency action unlawfully withheld or unreasonably delayed…" 5 U.S.C. § 706(1). He also argues that the Court may "hold unlawful and set aside agency action… excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2).[1]

Claims regarding an agency's failure to act may proceed under § 706(1) of the APA, which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Such challenges are appropriate, however, only when the plaintiff shows "an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. So. Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis in original).

To satisfy his burden on a motion for preliminary injunction, Petitioner "must provide facts and theories sufficiently detailed to present a *prima facie* case." *Begay-Platero v. Gallup McKinley Cty. Sch. Dist.,* 18-cv-861 PJK, 2019 WL 2008888, at *2 (D.N.M. May 7, 2019).

The record is clear that Secretary *considered* placing Petitioner in the least restrictive setting pursuant to § 1232(c)(2)(B). *See* **Doc. 16 Exs. A, B.** Respondents presented an age-out worksheet that was signed and completed by a Field Office Juvenile Coordinator and also reviewed and signed by a supervisor. The worksheet was contemporaneously completed when DHS considered placing Petitioner in the least restrictive setting.

---

[1] Petitioner's sole argument in the motion is that DHS failed to consider Petitioner's placement in the least restrictive setting, not that their discretionary decision was arbitrary and capricious. Petitioner's motion does not use the words "arbitrary and capricious." The Court will therefore limit its analysis to the arguments raised in the motion. *See* **Doc. 5 at 33-34.**

The worksheet provides that it is "one means by which ICE ERO demonstrates its compliance with the law governing custodial decisions for individuals who were unaccompanied alien children (UACs) at the time of their initial encounter with the U.S. Government, but who are now aging out of the custody of the Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR). Please complete the worksheet for each former UAC who has aged out of HHS ORR custody and who is being or has been transferred to ICE ERO." **Doc. 16-2, Ex. B, at 5.** The worksheet then quotes the relevant statute, § 1232(c)(2)(B). *Id.*

Finally, it provides: "Federal law requires that ICE consider the least restrictive setting available after taking into account flight risk, danger to self, and danger to community. 8 U.S.C. § 1232(c)(2)(B). The purpose of this worksheet is to document that ICE considered the least restrictive setting available in making a custody decision. Field Office Juvenile Coordinators (FOJC) must carefully consider the least restrictive setting available for each age-out and document the reasons for the custody decision on this form, attaching additional documentation as necessary." *Id.*

The worksheet reflects the following. The FOJC and supervisor completed the worksheet, reviewed the statutory factors and evidence relevant to those factors. *Id.* The FOJC concluded that Petitioner was not a danger to the community. **Doc. 16-2 at 6.** However, she concluded that he was a danger to himself because he has no means or knowledge to care for himself without adult supervision. She also found that he had a "mental or emotional injury materially impairing [his] growth, developmental and psychological functioning." **Doc. 16-2 at 6.** Notably, he had been abused, neglected, or abandoned by his parents. Moreover, the FOJC found that he was a flight risk because he had no one who could sponsor him but also had family in the United States, including a brother, uncle, and aunt. **Doc. 16-2 at 7.**

12

A supervisor concurred with the recommendation, noting that "family will not sponsor juvenile and has been in custody for over 269 days. Subject has family ties in the US however they are unwilling to sponsor him therefor he is considered a flight risk." **Doc 16-2 at 8.** The supervisor noted there was conflicting information provided by ORR case managers and information provided by Petitioner's counsel.

Although Petitioner disagrees with the decision and the Respondents' interpretation of the evidence before them, he has not shown that Respondents *failed to act* by failing to consider placing Petitioner in the least restrictive setting. Rather, the worksheet shows that Respondents considered placing Petitioner in the least restrictive setting and considered the statutory factors, along with relevant evidence.

Petitioner asserts some inconsistencies in the worksheet regarding whether Petitioners parents could be found, and whether they abused, neglected, or abandoned him.[2] The record does not reflect that Respondents materially erred in their characterization of whether Petitioner's parents neglected or abused him and whether they were willing or suitable placements for him. To the extent Respondents did err, it is unclear how the alleged inconsistencies regarding his parents are relevant, given that Petitioner apparently does not seek placement with them.

### III.     Remaining Preliminary Injunction Factors

Because the Court finds that Petitioner has failed to show a substantial likelihood of success on the merits, Petitioner's motion for preliminary injunction necessary fails. *Dine Citizens Against*

---

[2] On March 12, 2020, a Texas state court ruled that Petitioner had been abused, abandoned, and neglected by his father and neglected by his mother, that reunification with them was not viable, and that it was not in Petitioner's best interest to return to Guatemala. **Doc. 5 at 20.** Petitioner himself alleges that he was twice abandoned by his father. **Doc. 5 at 17.** He states his father abused and neglected him. *Id.* Petitioner also admits that his mother neglected him and did not adequately support him. **Doc. 5 at 17.** Petitioner has weekly phone calls with his mother.

*Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).  Nevertheless, the Court notes Petitioner does not succeed on the remaining preliminary injunction factors.

Petitioner has not shown that he is likely to suffer irreparable injury if the Court denies the preliminary injunction.  Given that he has already tested positive for COVID-19 but went fourteen days without symptoms, Petitioner has not shown that he would be irreparably harmed.  Although Petitioner argues he *could* contract it again, he has not carried his burden on that point.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

Moreover, Petitioner appears to assert that his placement in a detention facility necessarily constitutes irreparable harm.  However, as to his APA claim, at most the Court would likely order Respondents to *again* consider placement in the least restrictive setting.  The APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act."  *Norton v. S. Utah Wilderness All., 542 U.S. 55, 64* (2004). Therefore, it appears that the Court can only order that Respondents *consider* placement in the least restrictive setting.  Petitioner has not shown that Respondents would be likely to release him if the Court ordered them to consider again placement in the least restrictive setting. Accordingly, the Court finds that Petitioner has not shown that he will suffer irreparable harm unless the injunction is issued.

Finally, as to the third and fourth factors, Petitioner must "make a strong showing that his threatened injury outweighs any injury to [Respondents] caused by granting the injunction."  *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).   Here, Petitioner has not made a strong showing

that the balance of harms tips in his favor. The "Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (collecting cases). The Court agrees with the Respondents that the mere possibility of harm faced by Petitioner, as stated above, does not outweigh the Government's strong interest in enforcement of immigration laws.

## CONCLUSION

Petitioner failed to show that he is substantially likely to succeed on the merits. A writ of habeas corpus under § 2241 is not available here because Petitioner merely challenges conditions of confinement. Moreover, Respondents did not fail to consider placing Petitioner in the least restrictive setting pursuant to 8 U.S.C. § 1232(c)(2)(B).

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Preliminary Injunction **(Doc. 5)** is **DENIED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE